Morphy, J.
The petitioners, proprietors of the Circus street Infirmary in this city, seek to recover of the defendants $802 50. They allege, that, on the 28th of August, 1841, they entered into a contract with the said Nicholson and Gardiner for the reception and treatment of such patients as might be sent to their *432 infirmary by the said defendants, or others, in pursuance of the agreement, on the terms and conditions therein specified. That under this agreement, the said Nicholson and Gardiner became indebted to them in a large amount, and that they are still so indebted in the sum claimed. They annex to their petition their contract with the defendants, and an open account, both which documents they pray to be taken as a part thereof. The defendants denied their indebtedness to the plaintiffs, admitted that they had entered into the contract attached to their petition, but averred that, in making it, they acted merely as the agents of the corporation known as the New Orleans Samaritan Society. There was a judgment below against them, and they appealed.
In the written agreement entered into between the parties, the defendants, as a committee appointed for the purpose by the New Orleans Samaritan Society, contracted with the plaintiffs. For and 'in consideration of $> 1 25, per diem, to be paid to the plaintiffs, the latter obliged themselves to receive all the patients that might be sent to their infirmary by the said society, to give them proper medical treatment, to provide a sufficient department in their infirmary for the reception of these patients, to be called “ The Samaritan Ward,” which at all times should be subject to the inspection of any committee appointed for the purpose, &c., and the account sued on is made out against the Samaritan Society. Thus, by these documents, which we must consider as a part of the petition, it appears, that the defendants acted as agents, gave the name of their principal, and were understood by the plaintiffs as having acted in that capacity. It is not alleged that they engaged personally to pay for the patients sent to the plaintiffs’ infirmary, that they contracted without authority, or exceeded that which they had ; nor that they acted for a non-existing principal against whom no resort could be had; nor is there any other document tending to show that these defendants, either expressly or impliedly, made themselves personally liable, although they acted as agents. Under these pleadings, which show no right of action against the defendants personally, no evidence was, perhaps, strictly admissible to establish such personal liability. No objection, however, having been made, evidence was admitted to show that, at,the time the contract was entered into, the *433 society or association lor which the defendants acted, had no legal existence as a corporation, and that its members were unknown. From this evidence it appears, that some time in 1840, or before, several benevolent persons associated themselves together for the purpose of extending relief to the indigent during the prevalence of epidemics, in this city, and were incorporated under the name they had assumed, of “The Samaritan-Society of New Orleans.” Being dissatisfied with the charter then given to them, the members of the Society, at a meeting held on the 12th of August, 1841, resolved to continue under their original constitution, until the necessary amendments to their charter could be obtained. These were made by a supplementary act, passed on the 8th of February, 1842, from which time it is believed that the society has acted under its charter. A witness says, that the society is composed of about sixty members, supposed to reside in the city ; that forty have signed the constitution ; but that the new members never signed it, and that no exact list or roll of the members has been made out. It is urged that, as the defendants acted, for a corporation which had no legal existence, and they have not made known the names of the persons composing it, they must be personally liable, because no resort can be had against their principal. The defendants being sued in their individual capacity, it was useless and unnecessary for them to give the names of the members of the Samaritan Society. Had they been sought to be made liable, as members of it, they would have had to name the other members, in order to be made responsible only for their proportion of the debt. Although not incorporated at the dale of the contract sued upon, the -Samaritan Society existed, and was well known to exist; it could acquire and possess property, make contracts, <fcc., in the manner pointed out by the Civil Code, art. 437. It cannot, therefore, be said to be an unknown principal, against whom no resort can be had, however difficult and troublesome that resort may be. Whenever a question arises, as to the individual liability of persons acting avowedly as agents for others, the great inquiry must be, to whom was the credit knowingly given, according to the understanding of both parties. Story on Agency, § 288. This can be properly ascertained, only bv an examination of the contract itself, of the ’ *434 circumstances under which it was made, and the manner in which it was carried out by the parties, and appears to have been understood, between them. There is nothing in the written agreement from which it can be inferred, that the plaintiffs looked to the defendants, personally, for remuneration. The existence of the Samaritan Society, was notorious, and to none better known than to the plaintiffs. Prom the minutes of the proceedings of the society, which they themselves gave in evidence, it appears, that the plaintiffs had already had’dealings with that association, and had made a settlement with it for a previous account, shortly before the date of the contract sued on.* It is then but reasonable to suppose, that when they were soon after called upon by a committee of the same society, to make a contract for the patients it might send to their infirmary, the plaintiffs looked to the society itself for remuneration, and not to those who held themselves out only as its temporary agents. They accordingly debited the Samaritan Society, and made out against it the account upon which they now sue. In this account we find two credits given to the society ; one for $ 120, paid to the plaintiffs in cash, on the 2d of July, 1842, after its final incorporation ; and a further credit of $450, which is stated to be an amount due to the Samaritan Society, by Dr. Mackie for rent. Thus it appears, that while the society was sending patients to the infirmary, under the contract made through its committee, Dr. Mackie, one of the plaintiffs tenanted property from it, and accordingly deducts the debt he owes, from that due by the society under the contract. How then can it be pretended, that the defendants must be personally liable, because they acted for an unknown principal, to whom the plaintiffs did not look, and against whom they can have no recourse. The doctrine that a person contracting as agent, is nevertheless personally bound, where there is no principal to whom resort can be had, proceeds upon the pre *435 sumption, that he who is able to contract, and does contract in his own name, although he is agent for another who is incapable of contracting, intends to bind himself, otherwise the contract would be without any validity. Story’s Agency, § 280, 281. No such presumption exists in the present case, as the association, whose agents the defendants were, was capable of contracting, and did contract more than once with the plaintiffs themselves. From the acts of the latter, and the evidence in the case, we are satisfied, that credit was given to the members of the Samaritan Society, and not to the defendants.
Robinson, for a re-hearing.
The question to whom the credit was given, must be decided by the written contract of the parties, where one exists. Such a contract as the one sued on, with
such words of description in the body of the instrument,' but signed in the individual names of the parties, is their individual •contract — not their contract as agents. There is no case on this point in the Reports of this State ; but the New York, Massachusetts, and English decisions are conclusive.
In Taft v. Breioster et al. (9 Johns. 334,) the defendants were sued on a bond in which, “by the name and description of Jacob Brewster, Thaddeus Loomis and Joseph Coats, trustees of the Baptist Society of the town of Richfield," they acknowledged themselves to be bound, &c. The bond was signed, “ Jacob Brewster, Thaddeus Loomis, and Joseph Coats, Trustees of the Baptist Society of the town of Richfield.1' On demurrer by defendants, that the bond was executed by them in a corporate, and not in their individual capacity, the court decided : “ That the bond must be considered as given by the defendants in their individual capacities. It is not the bond of the Baptist Church; and if the defendants are not bound, the church certainly is not, for the church has not contracted either in its corporate name, or by its seal. The addition of trustees to the names of the defendants is, in this case, a mere descriptio personarum''
It is, therefore, ordered and decreed, that the judgment of the Commercial Court be reversed, and that ours be for the defendants as in case of nonsuit; the costs to be paid by the appel-lees in both courts.

 The entry in the minutes, to which the court refers, is in these words; under the date of—
“ Mr. Nicholson reported verbally, that a settlement lias been made by him for the amount due Dr. G. W. Campbell, partly in cash, and partly by an order on Dr. J. M. Mackie, which Dr. Campbell has consented to receive.”